## DE HIHNS v. FREE.

1. EVIDENCE—PAROL.—A RESULTING TRUST arises by implication, in the absence of evidence of a contrary intent, and cannot arise when an express agreement in writing shows a contrary intent, and parol evidence is not admissible to show a resulting trust in conflict with a writing.
2. IBID.—A Circuit Judge has power to exclude evidence in support of irrelevant allegations permitted to remain in a pleading.
3. PLEADINGS—AMENDING—ANSWER—DISCRETION—LIMITATION OF ACTIONS.—Refusal of Judge to permit answer amended during trial by pleading statute of limitations, is not abuse of discretion.
4. MORTGAGES—SPECIFIC PERFORMANCE.—This action is not one practically to foreclose a mortgage, but for specific performance of a contract under seal based upon good consideration to convey real property.

Before ALLEN J. GREEN, Special J., Fairfield, January, 1904. Affirmed.

Action by George L. DeHihns against George W. Free, Joseph W. Free, Nancy D. Smith, Louisa C. McDonald, Nathan Free, Medora Spotts and Cornelia A. Jacobs.

The Circuit decree is as follows, omitting formal order of sale:

"This action came on to be heard before me at special November term, 1903, of the Court of Common Pleas for Fairfield County. Issues out of the cause were docketed on calendar 1. The case was reached late in the afternoon.

Counsel for defendants then stated that the original order submitting the issues was not in Court, but a copy was, and they would use the copy for the present and bring in the original in the morning. There appearing no objection to this course, a jury was empanelled and the trial proceeded. Pending the introduction of plaintiff's testimony, the Court adjourned for the night. Upon the opening of Court the next morning, counsel for the defendant stated that they had been unable to find the original order submitting the issues; that they could not say positively whether such order had been passed, but as there was no objection to it, proposed that I now sign the order. I suggested that plaintiff's counsel attach their consent. To this plaintiff's counsel demurred, saying that they did not desire to waive any rights they may have, and did not appear as consenting or resisting. Therupon I signed the order and the trial proceeded. Upon the introduction of parol testimony by the defendant to sustain the issues submitted to the jury, plaintiff objects upon the grounds hereinafter referred to.

"The testimony was held incompetent, and I withdrew the case from the jury, and proceeded to try the same on the equity side of the Court, upon the pleadings and testimony taken before me in open Court.

"The complaint alleges substantially:

"1. That the lands described in the complaint were levied on and sold by the Sheriff under execution against Charles Free and bought by James B. McCants, on November 2d, 1868.

"2. That McCants sold and conveyed the lands to the plaintiff for $1,200—then paid by plaintiff on May 1st, 1869.

"3. That plaintiff was the son-in-law of Charles Free and his wife, Harriet, and being desirous of their retaining the lands during their lives, the parties executed a lease, dated May 15th, 1869, by which, in consideration of certain covenants therein mentioned to be performed by Harriet Free, plaintiff leased the lands to her for the term of her natural

life, and a paper purporting to be the lease was recorded on January 14th, 1885, in the proper office.

"4. That on January 4th, 1869, the plaintiff and Charles and Harriet Free entered into an agreement under their hands and seals by which plaintiff agreed that upon the termination of the lease by the death of Harriet, the lands should be equally divided among the heirs of the said Charles and Harriet, provided certain conditions therein expressed should be first complied with, among which was the payment to plaintiff of the sum he paid to secure said property, with legal interest at seven per cent. from May 1st, 1869, which sum was $1,200. That this agreement, together with the deeds of the sheriff to McCants and of McCants to plaintiff, and plats relating to the land, were enclosed in an envelope which was sealed and given Mrs. Free, with the following endorsements on it: 'To be opened after the expiration of the lease of Mrs. Harriet Free in the presence of the children, by George L. De Hihns, or if dead or otherwise unable to be presnt, by the oldest living son of Mrs. Free.' The plaintiff has been unable to find said envelope since the death of Mrs. Free, but is informed that it is in existence, and in the hands of defendant's attorneys.

"5. That no part of said $1,200 has been paid, and the said Harriet retained possession of the land under the lease until her death, on January 1st, 1902, the said Charles having predeceased her, leaving as heirs at law and the heirs at law of the said Charles, nine children, named as defendants, and paintiff under terms of lease has taken possession and rented same to a tenant for 1902.

"6. That plaintiff has sought to have the agreement carried out without the aid of the Court, but that the defendants have failed and refused to comply with the conditions by the payment of said sum of money and interest, denying plaintiff's legal rights and interfering with and threatening to interfere with his quiet possession and receipt of rents, so that he is compelled to ask the aid of the Court, and prays

that the land be sold and the proceeds applied to the plaintiff's claim, etc.

."Defendants answer, admitting first paragraph of complaint, and so much of paragraph 2 as alleges the conveyance to plaintiff, but deny that plaintiff paid any part of the consideration; they also deny that plaintiff and Charles and Harriet Free entered into the agreement of June 12th, 1869, and allege that they have no knowledge or information of the other allegations of the complaint. And for a second defense substantially allege: That the funds with which the lands were purchased were not the funds of the plaintiff, but were furnished by Charles Free to the plaintiff for the purpose of purchasing the lands and preserving the same for the benefit of himself, his wife and family, including plaintiff's wife. That the funds so furnished were used by the plaintiff in the purchase of the land, and the deed taken in the name of plaintiff, and submit that a resulting trust thereby arose in favor of Charles, and they as his heirs at law are entitled to partition. That if the instrument set out in paragraph 4 of the complaint (the agreement) was ever entered into, such agreement was merely to carry out the understanding and agreement by which plaintiff should nominally hold the title, without any beneficiary interest therein to himself, for the use of the said Charles and Harriet. Wherefore, they ask partition.

"It appears from the testimony that in 1868, Charles Free was heavily embarrassed, there being a large amount of judgments against him, three of which were owned or controlled by J. B. McCants, Esq., that under executions based upon these judgments, his lands were sold by the sheriff and bought by Mr. McCants, and *nulla bona* returns made by the sheriff on other executions against Free. In this state of affairs, Free applied to his son-in-law, the plaintiff, who had just come into possession of a legacy of about $2,500, our money, from his kindred in Germany. The plaintiff came from his home in Lexington to Winnsboro and ar-

ranged with Mr. McCants to purchase the property from him for the sum of $1,200. This arrangement was consummated by the payment of the money and the delivery of the deed from McCants to plaintiff, dated the 1st day of May, 1869, which deed was recorded on September 30th, 1869. On the 15th day of May, 1869, the plaintiff leased these premises to Harriet Free for the term of her life, as alleged in the complaint. This lease is executed under seal by the plaintiff, Charles Free and Harriet Free, witnessed by two witnesses, and was recorded Janaury 14, 1885. On June 12th, 1869, the paper called agreement, which is the basis of this action, was executed by the plaintiff and his wife, Lucinda, under seal, witnessed by William Summer, who is now dead. Upon this agreement appears the following:

" 'We, the undersigned, do hereby sanction and approve the intention of George L. DeHihns.

" 'Done at our residence in Fairfield County, S. C., this 2d October, in the year of our Lord, 1869.

" 'CHARLES FR (L. S.)
" 'HARRIET FR (L. S.)'

"It is apparent from an inspection of the paper that Charles and Harriet did not leave themselves room for their full names before the scrolls, hence the abbreviation of the 'Free.' These three papers, together with the deed of the sheriff to McCants, and the envelope in which papers had been sealed, were produced by the defendants at the trial, upon notice from the plaintiff. The envelope is mutilated, but some of the seals are intact, and show the impression of a 'nickel' which, under the glass, bears date '1869.' The endorsements on the envelopes are as follows: 'Recorded deeds of real estate and personal property for division among the body heirs of Charles and Harriet Free, Fairfield County, So. Ca.'

" 'The seals of those enclosed papers will be broken only in the presence of all the body heirs of Charles and Harriet Free or their body heirs or agents after the lease given of

the above property by George L. DeHihns, of Lexington County, to Harriet Free and agency given to Charles Free expires—by the oldest living body son of Harriet and Charles Free.'

" 'Sealed this 2 day of October in the year of our Lord one thousand eight hundred and sixty-nine, in presence of all three unto signed persons concerned.'

"The signature to the three persons to this last endorsement has been erased with a knife or some sharp instrument and partially pasted over with another and different kind of paper. These endorsements on the envelope are in the handwriting of plaintiff and I have no doubt that the erasures was of the names of the plaintiff and Charles and Harriet Free.

"At this stage of the case, the defendant proposed to prove by parol that the purchase money of the premises, which was the consideration of the deed from McCants to DeHihns, was the property of and furnished by Charles Free. To this testimony, plaintiff objected on three grounds:

"1. Because it would contradict the terms of the deed to McCants.

"2. Because the defendants claiming as the heirs at law of Mr. and Mrs. Free were estopped by the lease and agreement from disputing the title and settlement made through them.

"3. That such evidence would tend to show a secret agreement that would be a fraud upon the creditors of Charles Free; and cited 1 Perry on Trusts, sec. 151; *Nesbit* v. *Cavendar,* 30 S. C., 33; *Brown* v. *Mattison,* 3 Rich. Eq., 153-54; *Broughton* v. *Broughton,* 4 Rich. L., 491. I did not think the first ground well taken. The deed did not purport to say to whom the $1,200 paid by plaintiff belonged. But the other grounds I thought were well taken, and, in any view, the testimony was inadmissible, because even conceding it to be true, as averred, that the money was furnished

by Free for the purpose of preserving the property to himself and family, the writing signed by the parties at the time of the transaction was the best evidence of the terms on which the settlement was made, and this settlement would be sustained as a family settlement. *Smith* v. *Tanner,* 32 S. C., 263; *Gardner* v. *Gardner,* 49 S. C., 62.

"This ruling practically struck out defendant's second defense and eliminated the issues referred. The issues were, therefore, withdrawn from the jury, and the defendants thereafter confined to evidence impeaching the writings or showing performance of the conditions of the agreement. I do not understand the rule laid down in *Ragsdale* v. *Railroad Company,* 60 S. C., 329, to conflict with this view. In the first case, the Court pointed out the remedy provided under the Code for simplifying the issues and ridding pleadings of irrelevant or redundant matter, but based their decision not on the failure of the objecting party to avail himself of that remedy, but upon the fact that the question had not been passed upon by the Court below, and, therefore, the objection could not be raised for the first time in the Supreme Court. In the latter case, the exception was held bad on its merits, and the remedy for pleadings stated in the first case approved and affirmed. None of the cases go to the extent of holding that failure of the party to avail himself of the motion to strike out will render competent evidence that will overturn settled principles of law, such as permitting a tenant to those claiming under him to dispute the title of his landlord, or an heir at law the right of his ancestor to dispose of his property in his lifetime, and cannot be carried to such extent without making the right of litigants dependent upon the skill of the pleader rather than the law and equity of the cause—the evil the adoption of the Code was intended to obviate.

"Some testimony was introduced tending to show that the signature of Mr. Free to the agreement was not his writing, and the witness who purports to have probated the lease did not sign the probate; but Mrs. Spotts, one of the defendants,

testified that she was present and heard the agreement read over by the plaintiff to her father and mother, and the same together with the other papers was sealed by plaintiff in the presence of all them and delivered to her mother. My conclusion is that the papers are all genuine, and were executed and delivered by the parties, placed in an envelope, which was sealed and delivered as alleged in the complaint. Charles Free died March or April, 1884; Harriet Free on January 1st, 1902. This action was commenced May, 1902.

"It was urged that the action was in effect the foreclosure of a mortgage and the agreement an instrument in the nature of a mortgage, and it not having been recorded, and there having elapsed more than twenty years from the creation of its lien, under section 2449 of the Code of Laws, the action could not lie, and in this view leave to amend the answer so as to plead the statute in bar was asked at the close of the argument. I do not think the amendment material. In my view, the agreement creates no lien; it is but an agreement—a contract under seal based upon good consideration to convey the premises upon the performance of certain conditions precedent by the heirs of the bodies of Charles and Harriet Free. The defendants are not bound to perform these conditions, but they have the option of so doing, and if they do, then plaintiff is bound to convey. The action is not one of foreclosure, but an action for the specific performance of a contract-vendor against vendee—and its office is to require defendants to perform or submit to a sale of the lands and application of the proceeds to the contract price. The title is held as security for the price. Vendee cannot compel conveyance until he pays the price, not even though the notes given are barred by the statute. *Blackwell* v. *Ryan*, 21 S. C., 121; *Gregoris* v. *Bulow*, Rich. Eq. Cases, 245.

"Upon the whole, I am of opinion that the action is well brought, and the plaintiff is entitled to the relief sought."

Defendants appeal on following exceptions:

"1. Because his Honor erred in withdrawing the issues from the jury upon the ground that the testimony offered by defendants to sustain the allegations of their answer was incompetent; whereas, said testimony was competent, the plaintiff not having moved to strike out any part of the answer, and the issues should have been submitted to the jury on such testimony.

"2. Because his Honor erred in holding that the testimony offered by defendants by several witnesses tending to show that Charles Free, deceased, had paid all, or a part, of the purchase money of the tract of land, as alleged in the answer, was incompetent, the error being that such testimony was competent for the following reason: (a) It was strictly in reply to testimony offered by the plaintiff. (b) It was strictly competent to prove the allegations of the answer, which the plaintiff had failed to move to strike out. (c) It was competent because it tended to disprove the allegations of the complaint. (d) Because it was competent, by such testimony, for defendants to show the real consideration of the deed from James B. McCants to George L. De-Hihns, and that the same was not paid by the said George L. DeHihns, but by another party, in which event the plaintiff would not be entitled to be paid anything on his alleged agreement.

"3. Because his Honor erred in holding that the testimony offered by the defendant to sustain the allegations of their answer was incompetent; whereas, he should have held that the said testimony was competent, and should have admitted it to show that the purchase money of the premises described in the complaint was paid by Charles Free at the time of the execution of the deed of James B. McCants to George L. DeHihns, and that such purchase money was not paid by said George L. DeHihns.

"4. Because his Honor erred in holding that the testimony offered by defendants to prove that Charles Free had

paid all, or a part, of the purchase money mentioned in the deed from James B. McCants to George L. DeHihns, was incompetent, on the ground that it would have been a fraud against the creditors of Charles Free; when his Honor should have held that such testimony was competent, no creditor of Charles Free being before the Court; and even if such testimony tended to show a fraud as against the creditors of Charles Free, the defendant should have been allowed to show it, in order that the Court might grant no relief to either party, as the plaintiff would have been a participant to any such fraud, and in *pari delicto,* even if it had been established.

"5. Because his Honor erred in holding that the defendants, claiming as the heirs of Mr. and Mrs. Free, were estopped by the release and agreement from disputing the statements made therein, and in holding that parol testimony could not be admitted to show the true consideration of the deed; whereas, he should have held that it is always competent to show the real and true consideration of a deed, even by parol testimony, and he should have further held that the papers mentioned did not constitute a family settlement.

"6. Because his Honor erred in holding that the writing signed by the parties at the time of the transaction was the best evidence of the terms on which the settlement was made, and in holding that such writing constituted a family settlement; whereas, he should have held that the paper referred to was never agreed to by Charles Free and Mrs. Free, as appears from an inspection of said alleged agreement.

"7. Because his Honor erred in not holding, as contended by the defendants, that the deed from James B. McCants to George L. DeHihns, of date the 1st day of May, 1869, was a deed in the nature of a mortgage, and that, taken together with the other papers set forth in the complaint, practically constituted a mortgage; and that as more than twenty years had elapsed from the date of said deed at the time of the commencement of the action, and no acknow-

23—70.

ledgment of the debt secured thereby, or any note of any payment thereon having been recorded on the record of said .deed having the effect of a mortgage, that it had ceased to constitute any lien on the premises described in the complaint at the time of the commencement of this action.

"8. Because his Honor erred in refusing to allow defendants to amend their answer pending the trial of this cause, so as to set up by way of defense the failure of plaintiff to comply with the provisions of section 2449 of vol. 1 of the Code of Laws of 1902.

"9. Because his Honor erred in not holding that the provisions of section 2449 of vol. 1 of the Code of Laws of 1902 need not be specially pleaded.

"10. Because his Honor erred in holding that the instrument of writing set forth in the complaint was an agreement based upon a good consideration to convey the land described in the complaint to the defendants, upon the performance of certain conditions, and that this was an action for special performance of contract between vendor and vendee, when there was no evidence to sustain said findings on the part of his Honor.

"11. Because his Honor erred in refusing to admit the testimony offered by the defendants to show that the purchase money in whole, or any part, had been paid by Charles Free; when, if such fact had been established by the testimony, a resulting trust would have arisen in favor of the said Charles Free, or his heirs at law."

*Messrs. J. E. McDonald* and *G. W. Ragsdale,* for appellants. *Mr. McDonald* cites: *Evidence offered in support of irrelevant allegations is admissible:* Pom. R. R. R., sec. 552; 60 S. C., 201, 381; 61 S. C., 329; 63 S. C., 570; 65 S. C., 97, 234. *If there was fraud in acquiring the title, the plaintiff was in pari delicto and Court will not aid him:* 14 Ency., 2 ed., 273; 2 Hill L., 488; 1 N. & McC., 334; 10 Rich. L., 491; 2 Brev., 275; 11 Rich L., 601; 98 Mass., 118; 28 Wis., 637; 2 Rich. Eq., 355; 25 S. C., 405; 31 S. C., 60;

38 S. C., 357; 43 S. C., 323; 61 S. C., 40. *Equity will not decree specific performance in case of gratuity:* 26 Ency., 2 ed., 26.

*Messrs. A. S.* and *W. D. Douglass,* contra. *Mr. A. S. Douglass* cites: *Lease being established, tenant is estopped from disputing title of the landlord:* 6 Rich., 350; 30 S. C., 42. *Grantor cannot dispute fact recited in his deed:* 10 Rich. Eq., 113; 1 McC., 85; 18 S. C., 493; 2 Hill Ch., 211. *If the trust be declared in writing, there can be no resulting trust:* 1 Perry on Trusts, sec. 140; 6 Paige Ch., 453; 5 Ibid., 117; 56 S. C., 83; *and parol evidence to show resulting trust is inadmissible:* 42 S. C., 351; 27 S. C., 380; 56 S. C., 558. *Agreement should be sustained as family arrangement:* 32 S. C., 263; 49 S. C., 62. *Showing a resulting trust would impeach plaintiff's title:* 4 Rich., 491; 32 S. C., 595; 53 S. C., 486; 3 Rich. Eq., 153; 14 S. C., 334; 56 S. C., 391. *Failure to move to strike out irrelevant allegations in answer would not make testimony in support competent:* Pom. R. & R., sec. 548, 597, 603; Bliss on Plead., secs. 420-424; Boone's Code Plead., secs. 243, 244, 249; 2 Wait's Pr., 437; 53 S. C., 485; 18 S. C., 313. *If parol evidence properly ruled out, it was not error to withdraw issues from jury:* Code of Proc., 274a; 55 S. C., 276; 36 S. C., 303; 52 S. C., 472. *This action is not for foreclosure of mortgage, but for specific performance of a contract:* 4 Kent. Com., *125; 2 Wash. on Real Prop., 4; 13 Ency., 1 ed., 775; Rice, 444. *Such action is not subject to statute of limitations:* 21 S. C., 121; Rich. Eq. Cas., 245; 16 S. C., 76; McM. Eq., 14; 20 S. C., 33; 4 Rich. Eq., 190.

December 6, 1904. The opinion of the Court was delivered by

MR. JUSTICE JONES. The decree of the Circuit Court and the exceptions are reported herewith, and reference may be had thereto for the facts of this case and the specific points involved in this appeal. No exceptions are taken to the find-

ings of fact upon which the decree rests and this Court is satisfied that the conclusions reached are sound and just, and it is not deemed necessary to review all the reasons assigned.

The chief reliance of appellants in resisting the relief sought by respondent was their claim of a resulting trust. A resulting trust arises by implication in the absence of evidence of a contrary intent, and cannot arise when an express agreement in writing shows a contrary intent.    Perry on Trust, sec. 124; *Manning* v. *Screven*, 56 S. C., 83, 34 S. E., 22.    The lease and agreement proven in this case between the plaintiff and Mr. and Mrs. Free, under whom defendants claim as heirs at law, show a relation of the parties to the property inconsistent with the resulting trust claimed.    It must follow that defendants could not assail the lease and agreement by parol evidence in conflict therewith, and that the exclusion of such evidence and the withdrawal of such issue from the jury was proper.

The contention of appellants, that the evidence offered was proper, because the answer alleged a resulting trust and the allegations had been allowed to remain, is fully met by the case of *Martin* v. *Seaboard Air Line Ry.*, 70 S. C., 8, wherein this Court held that the trial Judge has power to exclude evidence in support of irrelevant allegations allowed to remain in a pleading.

The refusal to allow the defendants to amend answer so as to plead the statute of limitations, was within the discretion of the Court, and no abuse of discretion appears.    The amendment was proposed during trial, and its refusal deprived defendants of no substantial right.

We are entirely satisfied with the conclusions of the Circuit Court, that this action is not one practically in foreclosure of a mortgage, but is one in the nature of an action for specific performance of a contract under seal based upon good consideration to convey the premises upon the performance of certain conditions precedent.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.