THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Thomas ONeal, Rhudean Spencer, Aquilla ONeal, Jeral H. Smith, Finley ONeal, Jr., Virgil D.H. ONeal, Diane P. Kennedy, Linda Butler, Walter ONeal, Evelyn ONeal, George ONeal, Jr., Raye Boyd, Gaye Harper, Cynthia Riley, Santana Jarboe, Cassandra Horton, and Crystal Mims, Respondents/Appellants,
 v.
 Unita Pearson, Hattie Lee Black, Ruby Young, Patrick ONeal, and (as defendants whose names are unknown) any child or children and any heirs at law or distributees or devisees of the above named persons if they or any of them be dead, and any and all persons entitled to claim by, through or under them, or any of them; also any and all other persons unknown claiming any right, title, estate, interest in or lien upon the real estate described in the complaint herein, all such unknown adults who are sui juris being as a class designated as John Doe and all such persons who are under the age of eighteen (18) years, incompetent, incarcerated, in the military service or suffering under some other legal disability being as a class designated as Richard Roe, Appellants/Respondents.
 
 
 

Appeal from Fairfield County
 Kenneth G. Goode, Circuit Court Judge
Unpublished Opinion No. 2007-UP-340
Heard February 6, 2007  Filed July 6, 2007    

AFFIRMED

 
 
 
 D. Reece Williams, III, and Louis H. Lang, both of Columbia, for Appellants/Respondents.
 Raymon E. Lark, Jr., and E. Crosby Lewis, both of Columbia, for Respondents/Appellants.
 
 
 

PER CURIAM:  Certain intestate heirs of Walter Wise ONeal (collectively the ONeals) challenged a 1961 deed granting 100 acres of property to Unita Pearson, alleging the deed was forged.  The case was first submitted to a jury, which answered the questions set forth in a special verdict form.  The trial court then considered the equitable issues and upheld the deed.  Pearson and the ONeals both appeal.  We affirm.
FACTS
Before his death, Walter Wise ONeal (Father) owned over two hundred acres of land in Fairfield County.  He had nine children.  He and some of his children lived on the land in a home the family called the Big House.  Sometime after his wifes death, he moved in with his daughter, Unita Pearson.  Pearson filled the role of matriarch in the family. 
 
Beginning in 1961, Father deeded one-acre tracts to his children.  Most of the children built houses on the tracts.  Also in 1961, Father allegedly conveyed 100 acres of his land to Pearson.  The deed appears to be properly witnessed and notarized.  Pearson testified Father gave her the executed deed, but she did not see him sign it.  According to Pearson, Father told her to take the deed and record it.  She placed the unrecorded deed in a trunk in her home.  She did not record the deed until August 9, 1969. 
 
In 1964, Father had a stroke.  Pearson subsequently became Fathers primary caregiver; while the other children often brought him food and spent time with him.  Father died intestate in 1968. 
 
Pearson handled the family affairs after Father died.  She paid all of the property taxes and leased hunting rights to the land.  However, testimony also indicates the other children would give her money to help pay the property taxes when the revenue from leasing hunting rights did not cover the tax bill.  
 
In the fall of 1999, Leon Thompson, a surveyor, found the deed in the Fairfield County courthouse and informed George ONeal, another of Fathers children, of the deeds existence.  George and his son went to an attorney, who recommended hiring a handwriting expert.  As a result, they hired Marvin H. Dawson, Jr. to examine the deed.  Dawson issued a report, opining the signature on the deed was not Fathers and Pearson could not be eliminated as the person who signed Fathers name.  After receiving more samples, he contended Pearson signed Fathers name on the deed.[1]  
 
In early 2001, Pearson sold timber from the 100 acre tract for $222,203.00.  The ONeals filed the present action on April 19, 2001.  They later obtained a temporary injunction, restraining Pearson from using any of the remaining proceeds of the timber sale. 
 
The ONeals amended their complaint twice.  The second amended complaint alleged Father did not sign the deed and that Pearson forged his signature.  As a result, the ONeals sought to set aside the deed, damages for fraud, an accounting of all funds generated from Pearsons use of the 100-acre tract, a constructive trust over the remaining funds, a judicial partition of the 100-acre tract, and a partition of all of the land owned by Father at his death.  The ONeals and Pearson later stipulated to the partition of the remaining land. 
 
Pearsons answer to the Second Amended Complaint denied the forgery allegation and set up affirmative defenses of the statute of limitations, laches, estoppel, waiver, adverse possession, and presumption of a grant.  On March 17, 2004, Pearson was found to suffer from the early stages of Alzheimers disease.  Consequently, she was unable to assist with her defense and her son was appointed as her guardian ad litem.  
 
The legal and equitable issues were bifurcated; Pearson and the ONeals first tried the issues of forgery and fraud before a jury.  The ONeals explained they would prove Father did not sign the deed and Pearson forged the deed.  Several family members testified, as did Dawson.  In addition, Pearsons deposition testimony was read into the record. 
 
After all the evidence was presented, the ONeals and Pearson agreed to a jury verdict form, which reads, in pertinent part:
 

 1. Did Walter Wise ONeal sign the deed to the 100 acres in question?
 ___ Yes. If you answer yes, stop.
 ___ No. If you answer no, go to question 2.
 2. Did Defendant Unita Pearson commit forgery by signing the deed to the 100 acres in question?
 ___ Yes. If you answer yes, go to question 3.
 ___ No. If you answer no, stop.
 3. Did Defendant Unita Pearson commit fraud against Plaintiffs?
 ___ Yes. If you answer yes, go to question 4.
 ___ No. If you answer no, go to question 5.
 4. If you answered yes to either question 2, question 3, 
 or questions 2 and 3, then please answer the following question: what is the total amount of 
 actual damages from Defendant Unita Pearson to which Plaintiffs are entitled as a result of their
 forgery, fraud, or forgery and fraud claims?
 . . . .

In its jury instructions, the trial court explained the jury would decide the issues of fraud and forgery.  The jury deliberated and returned a verdict, checking No on question 1 and No on question 2 of the verdict form.  As instructed, the jury stopped after finding Pearson did not forge the deed by signing it. 
 
Pearson moved for judgment not withstanding the verdict (JNOV), arguing the trial court should grant her a judgment based on adverse possession or the presumption of a grant.  After the ONeals filed a return, the trial judge held a hearing and subsequently entered an order denying the motion and holding the jury effectively found that there was sufficient evidence indicating [Pearson] had not established . . . its affirmative defenses . . . .  Additionally, the trial judge held the legal issues . . . are now concluded . . . . The equitable defenses will remain active pending resolution of the equitable claims and defenses in this case.  Pearson filed a notice of appeal from that order.  The appeal was held in abeyance while the equitable issues were considered by the trial judge. 
 
After a hearing on the equitable issues, the trial judge entered an order upholding the deed, finding the jury had concluded no forgery had taken place.  The judge also held the doctrine of laches barred the ONeals action.  The court subsequently denied the ONeals motion to alter or amend the judgment.  This appeal followed.
STANDARD OF REVIEW
On appeal, the ONeals argue the trial court erred in denying their claims of setting aside a deed, an accounting, a constructive trust, and partition.  These are all equitable actions.  See  Bullard v. Crawley, 294 S.C. 276, 278, 363 S.E.2d 897, 898 (1987) (stating action to set aside a deed is in equity); Laughon v. OBraitis, 360 S.C. 520, 524, 602 S.E.2d 108, 110 (Ct. App. 2004) (stating actions seeking an accounting and partition are equitable);  Doe v. Roe, 323 S.C. 445, 448, 475 S.E.2d 783, 784 (Ct. App. 1996) stating action to declare a constructive trust is in equity).  In an equitable action, the appellate court may find facts in accordance with its own view of the preponderance of the evidence.  Townes Assocs. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).  [W]hen issues common to both legal and equitable claims are to be tried in a single proceeding, legal issues are to be determined first, and the findings of the jury are binding on the sitting judge, as trier of the equitable claims.  Johnson v. South Carolina Nat. Bank, 292 S.C. 51, 55, 354 S.E.2d 895, 897 (1987).  
 
LAW/ANALYSIS
The ONeals argue the trial judge erred in interpreting the jurys verdict and applying it to preclude equitable relief.  Specifically, the ONeals contend the jurys finding that Father did not sign the deed implies the deed was forged and, therefore, void.  We disagree.[2]
Initially, we hold the ONeals waived this argument by agreeing to submit the issue of forgery to the jury and agreeing to the jury form.  When a verdict is objectionable as to form, the party who desires to complain should call that fact to the courts attention when the verdict is published.  If the party fails to do so, the right to complain is waived.  Bensch v. Davidson, 354 S.C. 173, 179, 580 S.E.2d 128, 131 (2003).
In this case, the trial judge submitted the issue of forgery to the jury.  The ONeals did not object to this portion of the jury charge.  Further, the verdict form, to which the ONeals agreed, informed the jury to stop if it found Pearson did not forge the deed.  Under the terms of the verdict form, only if the jury answered Yes to the question of whether Pearson forged the deed could the jury make a finding of forgery.  Accordingly, the ONeals waived their right to establish forgery by some other theory.

Furthermore, the ONeals are incorrect in their proposition that they proved forgery by showing Father did not sign the deed.  Forgery is defined as: The false making or the material altering of a document with the intent to defraud.  A signature of a person that is made without the persons consent and without the person otherwise authorizing it.  Blacks Law Dictionary (6th ed. 1990).  When a deed is valid and regular on its face, it is presumed to be valid in all respects.  Davis v. Monteith, 289 S.C. 176, 182, 345 S.E.2d 724, 727 (1986).  Where a grantors signature is placed on the instrument by the hand of another, the grantor presumptively adopts this signature as his or her own absent clear and convincing evidence to the contrary.  26A C.J.S. Deeds §385 (2001); see also Thompson v. Shell Western E & P Inc., 607 So.2d 37, 40 (Miss. 1992) (expressing the same rule); Guthrie v. Gaskins, 155 S.E. 185, 187 (Ga. 1930) (holding a presumption that a grantor authorized the signing of a deed arises when the deed is properly witnessed and acknowledged).
The ONeals rely on two South Carolina cases to support their proposition that they only needed to prove Father did not sign the deed: Barrett v. Miller, 283 S.C. 262, 321 S.E.2d 198 (Ct. App. 1984) and Kirven v. Lawrence, 244 S.C. 572, 137 S.E.2d 764 (1964).  We find their reliance on these cases misplaced.
In Barrett v. Miller, Barrett sued a church to set aside a deed to the church of a one-acre tract of land on the grounds that the deed was a forgery.  The parties agreed to submit the issue of whether Barrett signed the deed to a jury.  In addition, the parties agreed that, if the jury found for Barrett, the issue of further relief would be decided by the judge.  
 
The jury found for Barrett, and the judge referred the remaining issues to a master.  The master found Barrett had been unjustly enriched because the church constructed a building on the premises.  This court reversed the masters finding with respect to damages, holding the master erred in awarding damages greater than the increased value of the property as a result of the churchs construction.  Further, this court found equitable relief was improper because the church could use statutory law allowing a party to recover for good faith improvements made to real property which is later adjudicated to belong to another party.  Barrett, at 264, 321 S.E.2d at 199.  Frankly, we fail to see any possible application of Barrett to the facts of this case. 

In Kirven v. Lawrence, the heirs of a grantor sued the heirs of a grantee to set aside a conveyance.  The parties submitted the question of whether the grantor lacked the sufficient mental capacity to execute the deed to the jury.  The jury found for the heirs of the grantor.  After the supreme court reinstated the verdict, which had been set aside by the master, the heirs of the grantee sought to amend their answer to allege several affirmative defenses, including restoration of the mortgage status existing at the time of the transfer of the deed. 
 
Our Supreme Court affirmed the trial judges decision to allow the amendment.  In so holding, the court explained the doctrine of restoration: Restoration of the status quo is required of one seeking judicial cancellation of an instrument. . . .  Kirven, 244 S.C. at 579, 137 S.E.2d at 767 (citations and internal quotations omitted).  The ONeals point to this language to support their position.  Again, we see no application of Kirven to the present case.  
 
No where in either of those cases did the court make any holding that could be interpreted to mean that the challengers to a deed need only prove that the grantor did not sign the deed himself.  The ONeals are mistaken in their assertion that by finding Father did not sign the deed, the jury found that they had proved that the deed was forged.  The ONeals are also mistaken in their contention that they should prevail because Pearson did not allege that the deed was signed by someone else with Fathers authorization.  Pearson did not bear the burden of proof on that issue.  As the challengers to the deed, the ONeals had the burden of proving that the deed was forged.  This burden included not only proving that Father did not sign the deed, but also proving by clear and convincing evidence that it was signed by someone else without Fathers authorization.  We find the trial judge correctly held the ONeals failed to carry their burden to prove that the deed was a forgery.  Thus, we hold the trial judge did not err in denying their claims for equitable relief including setting aside the deed.  
 
CONCLUSION
We hold the ONeals waived their right to challenge the trial judges interpretation and application of the jurys verdict.  Alternatively, we reject the ONeals contention they proved forgery by showing Father did not sign the deed.  A party seeking to invalidate a deed for an alleged forgery bears the burden of proving, by clear and convincing evidence, the grantors signature is unauthorized.  Accordingly, the trial judges decision is
AFFIRMED.[3]
HUFF, BEATTY, and WILLIAMS, JJ. concur.  

[1] The ONeals also provided Dawson with a copy of deed dated June 10, 1964 granting Thomas and Louise ONeal one acre, which was witnessed by the same individuals as the Pearson deed.  The ONeals contended Pearson had signed that deed also.  Dawson agreed with that contention.  The ONeals however did not seek to have that deed voided.  
 
[2] Pearson asserts this court lacks jurisdiction because the ONeals failed to appeal from the jurys verdict.  The ONeals, however, are not directly attacking the jurys verdict on appeal.  Instead, they charge error in the trial judges interpretation and application of the verdict and the trial judges decision that laches bars equitable relief.  The alleged errors occurred, if at all, within the trial judges order denying equitable relief.  The ONeals timely appealed from the orders denying their equitable claims.  Accordingly, we find this court has jurisdiction to consider the ONeals appeal.  
 
[3]As we find the trial court did not err in refusing to set aside the deed because the ONeals failed to carry their burden of proving the deed was a forgery, we need not address Pearson and the ONeals remaining arguments.  See Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling appellate court need not review remaining issues when disposition of prior issues are dispositive).